```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X

JOHN DOE NO. 2,

                Plaintiff,           ORDER

           - against -               CV 2006-2096 (SLT)(MDG)

RABBI YEHUDA KOLKO and YESHIVA &
MESIVTA TORAH TEMIMAH, INC. F/K/A
YESHIVA TORAH VODAATH OF FLATBUSH,
INC.,

                Defendants.
- - - - - - - - - - - - - - - - - - - -X
```

GO, United States Magistrate Judge:

    Plaintiff, who filed his complaint under the pseudonym John Doe No. 2, brought this action against defendants Rabbi Yehuda Kolko and Yeshiva & Mesivta Torah Temimah, Inc. (the "Yeshiva") alleging that Rabbi Kolko sexually abused him as a child, while plaintiff was a student at the Yeshiva. Plaintiff moves to proceed anonymously and for extension of a protective order entered pending decision on the instant motion.

## BACKGROUND

    Plaintiff alleges that beginning in 1978, Rabbi Kolko sexually abused him while plaintiff was a minor student at the Yeshiva and Rabbi Kolko was employed there as a rabbi and teacher. Amended Complaint ("Am. Compl.") (ct. doc. 17) at ¶¶ 8, 9. Plaintiff further alleges that the Yeshiva engaged in a campaign

of intimidation, concealment and misrepresentations in order to prevent Rabbi Kolko's victims from filing civil lawsuits and obtaining facts necessary to bring civil claims. Id. at ¶ 12.

John Doe No. 1, originally a plaintiff in this case, dismissed his claims without prejudice to refiling a complaint in his true name. See ct. doc. 16. In a related case, 06-CV-2215, plaintiff Israel Tsatskis had also originally filed his complaint under the pseudonym, John Doe No. 3. See 06-CV-2215, ct. docs. 1, 18. Both plaintiffs also accuse Rabbi Kolko of sexually abusing them as children and the Yeshiva of concealing his crimes.

On June 2, 2006, this Court ordered plaintiff's counsel to disclose plaintiff's identity to defendants' counsel, with the instruction that counsel should not disseminate plaintiff's name to anyone other than the parties, personnel of the entity defendant and the attorneys' support personnel who need to know such information in preparing this case. See ct. doc. 4. After hearing from the parties on the terms of a formal protective order, this Court entered a protective order requiring, inter alia, that prior to disclosure of plaintiff's identity to potential witnesses, the intended recipient execute an Acknowledgment of Protective Order and Agreement to be Bound (the "Acknowledgment") acknowledging the existence of the protective order and agreeing to be bound by its terms. See ct. docs. 16, 20 and Exh. A (the "Protective Order"). As noted at a conference on June 21, 2006, this Court would entertain any future application

to modify the terms of the order in light of discovery concerns and would consider the need for such an order in ruling on the instant motion to proceed anonymously.

In support of his motion, plaintiff states that he suffers from post traumatic stress disorder, bipolar disorder and depression and will experience psychological harm if his identity is revealed in this case, a claim supported by his treating psychiatrist. Declaration of Ronen Hizami, M.D. at ¶¶ 3-4 ("Hizami Decl.") (ct. doc. 27); Affidavit of John Doe No. 2 dated June 28, 2006 ("John Doe Aff.") (ct. doc. 24) at ¶¶ 2-3. Plaintiff further claims that he will suffer intimidation and retaliation by members of the Orthodox Jewish community, of which he is a member, if his identity is publicly disclosed. See John Doe Aff. at ¶ 3.

**DISCUSSION**

Motion to Proceed Anonymously

Federal Rule of Civil Procedure 10(a) requires that a complaint "include the names of all the parties." Fed. R. Civ. P. 10(a). Moreover, the public has a right of access to judicial proceedings. See Nixon v. Warner Commc'n., Inc., 435 U.S. 589, 598-99 (1978); Huminski v. Corsones, 396 F.3d 53, 80 (2d Cir. 2005). Nevertheless, the federal courts have permitted a party to proceed under a pseudonym when special circumstances warrant anonymity. See, e.g., Roe v. Aware Woman Ctr. for Choice, Inc.,

253 F.3d 678, 685-87 (11th Cir. 2001); Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1068-69 (9th Cir. 2000); James v. Jacobson, 6 F.3d 233, 238-39 (4th Cir. 1993); EW v. New York Blood Center, 213 F.R.D. 108, 110-12 (E.D.N.Y. 2003); Javier v. Garcia-Botello, 211 F.R.D. 194, 196 (W.D.N.Y. 2002); Doe v. Smith, 105 F. Supp. 2d 40, 43-44 (E.D.N.Y. 1999); Doe v. United Servs. Life Ins. Co., 123 F.R.D. 437, 439 (S.D.N.Y. 1988). The Seventh Circuit, which disfavors the use of fictitious names, has recognized that sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity. See Doe v. Blue Cross & Blue Shield United of Wisc., 112 F.3d 869, 872 (7th Cir. 1997) ("fictitious names are allowed when necessary to protect the privacy of . . . rape victims, and other particularly vulnerable parties or witnesses"); see also Doe v. City of Chicago, 360 F.3d 667, 669 (7th Cir. 2004).

Whether to allow a plaintiff to proceed anonymously is within the court's discretion. See Aware Woman Ctr., 253 F.3d at 684; Javier, 211 F.R.D. at 195; EW, 213 F.R.D. at 110. Courts will permit a party to proceed under a pseudonym where "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." Does I Thru XXIII, 214 F.3d at 1068; see Javier, 211 F.R.D. at 195; EW, 213 F.R.D. at 111; Smith, 105 F. Supp. 2d at 42-44. Among the factors courts have considered in balancing these competing interests are: 1) whether the plaintiff is challenging

governmental activity or an individual's actions, 2) whether the plaintiff's action requires disclosure of information of the utmost intimacy, 3) whether identification would put the plaintiff at risk of suffering physical or mental injury, 4) whether the defendant would be prejudiced by allowing the plaintiff to proceed anonymously, and 5) the public interest in guaranteeing open access to proceedings without denying litigants access to the justice system.  See EW, 213 F.R.D. at 111; Javier, 211 F.R.D. at 195; Smith, 105 F. Supp. 2d at 42.  Related to the third factor is the concern "whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties . . . ."  James, 6 F.3d at 238.

As to the first and fifth factors, whether the defendants are governmental entities is significant because a challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual.  See EW, 213 F.R.D. at 111. The Yeshiva and Rabbi Kolko are neither governmental entities nor ordinary private parties.  However, like the blood center discussed in EW, the Yeshiva "is organized solely to perform an important, public service" and the rabbi is employed to assist in achieving the Yeshiva's goals.  EW, 213 F.R.D. at 111-12.  Given the significant roles held by these defendants in their community, plaintiff's allegations of sexual abuse of children and the

Yeshiva's attempt to conceal such abuse raise concerns affecting a larger association rather than the interest of an individual plaintiff.

Additionally, the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes. See Doe v. Evans, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (granting anonymity to sexual assault victim). While the Yeshiva may be correct that its greatest asset is its reputation, it is not different from the blood center at issue in EW, which undoubtedly suffered from allegations that it transfused tainted blood. Although Rabbi Kolko's personal reputation is at stake, he and the Yeshiva will have a public forum to defend the charges of abuse and concealment since the two other plaintiffs originally proceeding anonymously have publicly disclosed their identities.[1] On balance, I find that this case is more analogous to one involving a governmental defendant where the private concerns are outweighed by the

---

[1] John Doe No. 3 filed an amended complaint under his true name, Israel Tsatskis, on July 27, 2006. See Amended Complaint, CV 06-2215 (ct. doc. 18). Although this Court is not aware of a new action filed by John Doe No. 1 under his true name, David Framowitz, who was interviewed and the subject of articles in New York Magazine and Jewish Week, is identified as the plaintiff who commenced this action with another plaintiff proceeding anonymously. See Robert Kolker, On the Rabbi's Knee, New York Magazine, May 15, 2006 (attached to Moskowitz Affidavit dated Sept. 6, 2006 ("Moskowitz Aff.") (ct. doc. 34) as Exh. A); Jennifer Friedlin, Black Hat Meets Blog, Jewish Week, May 25, 2006 (attached as Exh. B to Moskowitz Aff.)

-6-

overriding public interest in regulating the conduct at issue. EW, 213 F.R.D. at 111-12.

With regard to the second factor, courts have granted anonymity to protect against disclosure of a wide range of issues involving matters of the utmost intimacy, including sexual assault. See, e.g., Aware Woman Ctr., 253 F.3d at 685 (abortion); EW, 213 F.R.D. at 111 (infection with hepatitis B); Doe v. Evans, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (sexual assault victim); Smith, 105 F. Supp. 2d at 42 (sexual assault victim); WGA v. Priority Pharmacy, Inc., 184 F.R.D. 616, 617 (E.D. Mo. 1999) (status as AIDS patient); Doe v. United Servs. Life Ins. Co., 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (sexual orientation); see also Blue Cross, 112 F.3d at 872 (recognizing rape victims as entitled to anonymity). Indeed, many states in this country, including New York, have enacted laws to protect the anonymity of sexual assault victims. See N.Y. Civil Rights Law § 50-b. Upon approving New York's rape shield law, then Governor Mario Cuomo stated, "sexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy." 1991 McKinney's Sessions Laws of N.Y., at 2211-2212 (quoted in Deborah S. V. Diorio, 153 Misc.2d 708, 583 N.Y.S.2d 872 (N.Y. City Civ. Ct. 1992)); see also Coker v. Georgia, 433 U.S. 584, 597 (1977) ("Short of homicide, [rape] is the ultimate violation of self").

As to the third factor of injury and the related concern of retaliation, plaintiff's psychologist opines that the alleged sexual abuse at issue has caused plaintiff psychological and emotional injuries, including post traumatic stress disorder. Hazami Decl. at ¶ 3. He further states that plaintiff also suffers from bipolar disorder and that "any public disclosure of [plaintiff's] identity would be severely damaging to [his] already fragile psychological condition." Id. at ¶ 4. Plaintiff also asserts that he fears retaliation and ostracism by members of the Orthodox Jewish community if it is publicly disclosed that he is suing Rabbi Kolko and the Yeshiva for his alleged sexual abuse. John Doe Aff. at ¶ 3.

Defendants argue that plaintiff has submitted insufficient evidence of psychological harm if his identity is publicly disclosed. However, this Court finds that plaintiff's submissions are sufficiently particularized and specific to establish a serious risk of harm to plaintiff's mental health, since the focus of the inquiry at this juncture is the existence of special circumstances. See Smith, 105 F. Supp. 2d at 44; cf. Raiser v. Bringham Young Univ., 127 Fed. App'x, 409, 411 (10th Cir. 2005) (affirming denial of motion to proceed anonymously because plaintiff did not present evidence that proceeding publicly would cause psychological or physical harm). Thus, this Court denies defendants' request, made without any legal authority, that they should have an opportunity to depose plaintiff's psychiatrist,

examine plaintiff's medical records and conduct an independent psychiatric examination.  See Kolko Mem. of Law (ct. doc. 31) at 12; Yeshiva Mem. of Law (ct. doc. 33) at 19.  Moreover, none of the cases cited by defendants where courts denied the request of a victim of sexual assault to proceed anonymously involved assault on a child or specific evidence of emotional or psychological harm that would result from disclosure of the plaintiff's identity. See Doe v. Hartz, 52 F. Supp. 2d 1027 (N.D. Iowa 1999); Doe v. Shakur, 164 F.R.D. 359 (E.D.N.Y. 1996); Doe v. Bell Atlantic Bus. Sys. Servs., 162 F.R.D. 418 (D. Mass. 1995); Doe v. Univ. of Rhode Island, 28 Fed. R. Serv. 3d 366 (D.R.I. Dec. 28, 1993).

Defendants also contend that plaintiff's fears of retaliation and ostracism in the Orthodox Jewish community are overblown. Plaintiff alleges that an official of the Yeshiva warned family members of victims of Rabbi Kolko that if they pursued claims, they would be shunned by the Orthodox Jewish community and their other children would be expelled from the Yeshiva and prevented from attending other yeshivas in the New York area.  See Am. Compl. at ¶ 12; Moskowitz Aff., Exh. A at 3.  Plaintiff's allegations are supported by articles submitted by defendant.  In the article by Robert Kolker, On the Rabbi's Knee, Mr. Kolker describes at length the cultural factors within the Orthodox Jewish community inhibiting dissent among its members, including: "the overwhelming concern with shame (a child who makes an abuse claim can be thought to bring shame on his whole family);" "the

thinking that virtually any public complaint about another person amounts to slander;" and the notion that "say[ing] anything bad about the community" would be "desecrating God's name." Id. at 7; see Board of Educ. of Kiryas Joel Village School Dist. v. Grumet, 512 U.S. 687, 687, 690 n.9 (1994) (noting the insular nature of the Satmar community); Moskowitz Aff., Exh. B at 3 (quoting a sociologist who described the Orthodox community as a "society that controls information and suppresses public dissent"). Notwithstanding defendant Kolko's claims that there have been "no untoward community ramifications" from disclosure of other plaintiffs' identities, see Kolko Mem. of Law at 10, the article reports that one anonymous accuser of Rabbi Kolko has received threats including, "We're gonna get your family." Moskowitz Aff., Exh. A at 10.

Defendant further points to the fact that plaintiff no longer lives in New York. Kolko's Mem. of Law at 8. However, as courts in this Circuit have recognized, it is now possible to "determine whether a given individual is a party to a lawsuit in federal court anywhere in the country by the simplest of computer searches, to access the docket sheet of any such case electronically, and . . . that entire case files will be accessible over the Internet." Doe v. City of New York, 201 F.R.D. 100, 102 (S.D.N.Y. 2001) (denying anonymity where any injury was purely reputational and case did not involve private or intimate matter); see EW, 213 F.R.D. at 112-13. Given the ease

with which the public could access court files in this case, it is reasonable that plaintiff's fears extend beyond ostracism in the Brooklyn community.  See John Doe Aff. at ¶ 3.  Moreover, in Doe v. Hartz, cited by defendants, where plaintiff alleged that a priest fondled and kissed her, the court recognized that it is "apparent that any attack or perceived attack upon figures of any religious denomination may be greeted with hostility by certain adherents of that religion" and that "persons potentially offended by Doe's lawsuit are certainly not restricted to Iowa."  52 F. Supp. 2d at 1047.  In any event, the specific evidence plaintiff has submitted supporting his claim of emotional and psychological harm, particularly in light of his ties to a very tight-knit religious community, is sufficient standing alone to establish special circumstances warranting anonymity.

Defendants further argue that plaintiff's privacy concerns are unfounded because he has "publicly accused" Rabbi Kolko by allegedly confronting him at a bris.  However, none of the affirmations submitted by defendants clearly demonstrate that plaintiff publicly accused Rabbi Kolko of sexual abuse at the ceremony.  Moreover, in the New York Magazine article cited above, the author makes a vague reference to plaintiff's allegations but notes that he "wishes to maintain his anonymity."  Moskowitz Aff., Exh. A at 3.  Nor are the affirmations by members of the Brooklyn Orthodox Jewish community revealing their knowledge of plaintiff's allegations persuasive since not one affiant learned of the

allegations from plaintiff.  On this record, I am not prepared to conclude that knowledge of plaintiff's identity is so widespread that his privacy concerns are unjustified.

As to the factor of the prejudice to defendants, defendants primarily address the Protective Order issued by the Court pending decision on the instant motion.  That is a separate issue from the motion to proceed anonymously and is addressed below.  Defendants also argue that fairness dictates that plaintiff not be afforded anonymity while defendants must defend themselves from potentially negative publicity.  However, defendants do not point to any publicity concerning this plaintiff's claim against defendants save for one sentence in the New York Magazine article devoted almost entirely to the allegations of other alleged victims against the same defendants.  <u>See</u> Moskowitz Aff., Exh. A.  This plaintiff should not be held to account for the allegations of others even if they are represented by the same counsel.  Given the negative publicity already sustained by defendants, <u>see</u> Moskowitz Aff., Exhs. A, B, C, "any additional prejudice to the defendant[s'] reputation or ability to operate merely by pursuit of this action under a pseudonym appears minimal."  <u>EW</u>, 213 F.R.D. at 112.  The incremental prejudice from this plaintiff's allegations as opposed to the plaintiffs suing in their own name is negligible.  Even assuming that anonymity increases plaintiff's ability to communicate with the press outside the courthouse, the conduct of this litigation simply is not affected.  <u>See</u> <u>Doe v.</u>

Alexian Brothers Medical Center, No. 96 C 2042, 1996 U.S. Dist. LEXIS 5539, at *2 (N.D. Ill. Apr. 24, 1996) (plaintiff's press disclosures would not "influence the outcome of a trial, affect the defendant's rights or prejudice this case in any way").

Importantly, defendants do not identify how their ability to conduct discovery or impeach plaintiff's credibility has been impaired if he is permitted to proceed under a pseudonym. See EW, 213 F.R.D. at 112, Smith, 105 F. Supp. 2d at 44-45. Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by plaintiff's anonymity in court papers. Indeed, defendants already know plaintiff's true identity. See Aware Woman Center, 253 F.3d at 687 (no prejudice where plaintiff offered to disclose her name to defendant); EW, 213 F.R.D. at 112; Smith, 105 F. Supp. 2d at 44-45. In any event, since there are two other plaintiffs in this Court alleging similar conduct who will be proceeding under their real names, defendants will have an unfettered opportunity to present their defenses and to challenge the credibility of these accusers. Finally, the restrictions contained in this order only apply to the discovery period and may be reconsidered if this case goes to trial. See Smith, 105 F. Supp. 2d at 45.

In balancing the relevant factors, this Court finds that plaintiff has established special circumstances to warrant authorization to proceed anonymously.

Protective Order

Defendants challenge the Protective Order entered by this Court pending resolution of the motion to proceed anonymously.

A party may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party. Fed. R. Civ. P. 26(b)(1). However, a district court may limit discovery "for good cause shown" by making "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including that the discovery not be had or that it be had only by a method other than that selected by the party seeking discovery. Fed. R. Civ. P. 26(c). "The burden of persuasion in a motion . . . for a protective order is borne by the movant." Jones v. Hirschfeld, 219 F.R.D. 71, 74-75 (S.D.N.Y. 2003) (citing Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992)). To establish good cause, a party must show that disclosure will result in a specific injury. See In re Terrorist Attack on Sept. 11, 2001, -- F. Supp. 2d --, 2006 WL 2827639, at *1 (S.D.N.Y. Oct. 3, 2006); Wiwa v. Royal Dutch Petroleum Co., No. 96 CIV. 8386, 2006 WL 2724024, at *1 (S.D.N.Y. Sept. 22, 2006); but see Topo v. Dhir, 210 F.R.D. 76, 77-78 (S.D.N.Y. 2002) ("specificity requirement" does not apply to private individuals).

As discussed above, plaintiff has articulated the specific harm from disclosure of his identity. Given the private nature of the information at issue, and its potential for misuse, plaintiff

has shown good cause to prevent the disclosure of his identity other than for purposes of this litigation. See Kelly v. City of New York, No. 01 Civ. 8906, 2003 WL 548400, at *5 (S.D.N.Y. Feb. 24, 2003); Flaherty v. Seroussi, 209 F.R.D. 300, 304 (N.D.N.Y. Feb. 5, 2002); In re Savitt/Adler Litig., No. 95-CV-1842, 1997 WL 797511, at *3 (N.D.N.Y. Dec. 23, 1997). As to the requirement of the Acknowledgment, defendants have raised concerns regarding their ability to conduct discovery under the Protective Order. However, defendants' concerns are entirely speculative. Counsel for the Yeshiva states that in his experience, "asking a witness to sign a protective order prior to talking about a particular individual . . . will have a chilling effect detrimental to the conduct of effective discovery in this case." Moskowitz Aff. at ¶ 7. Defense counsel points to two potential witnesses he contacted who did not want to cooperate and concludes that the Protective Order is unworkable. See Moskowitz Aff. at ¶¶ 5-6. However, the natural reluctance of witnesses does not mean that the Protective Order will further inhibit their willingness to participate in discovery. There is no evidence that the reason those two witnesses failed to cooperate was due to the procedures required by the Protective Order. Indeed, defendants have submitted declarations from several individuals despite the Protective Order. All that is required under the Acknowledgment is that the person who receives disclosure of plaintiff's identity not further disclose or use such knowledge. Defendants have not articulated a

persuasive reason that this obligation will inhibit potential witnesses from communicating with counsel. Defendants' speculative concerns are outweighed by specific evidence of the harm to plaintiff from disclosure. Cf. Evans, 202 F.R.D. at 176 (denying protective order where alleged sexual assault victim did not demonstrate a serious specific injury). The execution of such acknowledgments by non-party witnesses is not uncommon to protect against the dissemination of confidential or private information. See, e.g., In re American Tobacco Co., 880 F.2d 1520, 1530-31 (2d Cir. 1989) (approving order protecting privacy of study participants); Hypro, LLC v. Reser, No. Civ. 04-4921, 2004 WL 2905321, at *7 (D. Minn. Dec. 10, 2004) (protecting confidential information, trade secrets and proprietary information); Gillard v. Boulder Valley Sch. District RE-2, 196 F.R.D. 382, 388 (D. Colo. 2000) (protecting personnel records, school records and juvenile delinquency records); Mader v. Motorola, Inc., No. 92 C 8089, 1994 WL 535125, at *5-*6 (N.D. Ill. Sept. 30, 1994) (protecting personnel and security policies); 3 West's Fed. Forms, District Courts-Civil § 2839.50 (5th ed. 2006).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to proceed anonymously is granted and the Protective Order is continued without prejudice to a future application for modification.

Any objections to this order must be filed with the Clerk of

the Court within ten days.  Failure to file objections within the specified time waives the right to appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

    **SO ORDERED.**

Dated:    Brooklyn, New York
           November 3, 2006

                                              /s/
                                          MARILYN D. GO
                                          UNITED STATES MAGISTRATE JUDGE