FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP - 5 2008 ★
BROOKLYN OFFICE
DOCKET & FILE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X
JOHN DOE No. 2,

                Plaintiff,

    — against —              06-CV-2096 (SLT)(MDG)

RABBI YEHUDA KOLKO and YESHIVA
& MESIVTA TORAH TEMIMAH, INC.
f/k/a YESHIVA TORAH VODAATH OF
FLATBUSH, INC.,

                Defendants.
------------------------------------------------X    **MEMORANDUM and ORDER**
JOHN DOE No. 3,

                Plaintiff,

    — against —              06-CV-2215 (SLT)(MDG)

RABBI YEHUDA KOLOS and YESHIVA
& MESIVTA TORAH TEMIMAH, INC.,

                Defendants.
------------------------------------------------X

**TOWNES, United States District Judge:**

        Plaintiff John Doe No. 2 brings this diversity action alleging negligence against defendant Yeshiva & Mesivta Torah Temimah ("Torah Temimah"), a Jewish day school and breach of fiduciary duty against defendants Rabbi Yehuda Kolko ("Rabbi Kolko") and Torah Temimah, in connection with defendant Rabbi Kolko's alleged sexual assault of John Doe No 2. In a separate, but related case, John Doe No. 3, also a former student at Torah Temimah, raises the same claims against defendants.[1]

---

[1] John Doe No. 3 revealed his name in his amended complaint and subsequent filings. For the sake of consistency, this Memorandum and Order will refer to him as John Doe No. 3.

Defendants move separately to dismiss both amended complaints on the ground that the actions are time-barred. For the reasons stated below, defendants' motions to dismiss pursuant to Fed R.12 (b)(6) are granted and both amended complaints are dismissed.[2]

## BACKGROUND

John Doe No. 2 filed his complaint on May 4, 2006 and his amended complaint in June 2006. Born in 1967, he alleges that Rabbi Kolko sexually abused him while he was enrolled at Torah Temimah. This abuse began in 1978 when plaintiff was in the seventh grade and lasted approximately three years. (John Doe No. 2, Am. Compl. ¶ 9). Born in 1975, John Doe No. 3 filed his complaint on May 12, 2006, and amended it on June 26, 2006. He was a student at Torah Temimah in 1986 when Rabbi Kolko began to sexually abuse him. (John Doe No. 3, Am. Compl. ¶¶ 6,8.) This abuse lasted for approximately three years until John Doe No. 3 completed the eighth grade and thereafter left Torah Temimah. (John Doe No. 3, Am. Compl. ¶ 8.)

*Plaintiffs' Claims*

Plaintiffs' amended complaints raise, essentially, identical claims. First, plaintiffs raise a negligence claim against Torah Temimah. (John Doe No. 2, Am. Compl. ¶¶ 15-21, John Doe No. 3 Am. Compl. ¶¶ 15-21.) Both appear to assert some conflated combination of claims for negligent hiring, retention, supervision, and/or failure to warn. They allege that the school owed a duty of reasonable care to ensure the safety, care, well-

---

[2] Although the parties have not moved to consolidate these matters, the Court's Memorandum and Opinion addresses both cases. Both plaintiffs are represented by the same counsel, attribute essentially the same allegations of abuse and misconduct to the defendants and raise identical arguments in support of tolling the statute of limitations.

being and health of the plaintiffs. (John Doe No. 2, Am. Compl. ¶ 16, John Doe No. 3, Am. Compl. ¶16.) Its duties included hiring, appointing, retaining and supervising Rabbi Kolko. (*Id.*) Torah Temimah negligently breached its duties, according to plaintiffs, because the day school knew or should have known that Rabbi Kolko sexually abused young male students under his supervision or control. (John Doe No. 2, Am. Compl. ¶ 17, John Doe No. 3, Am. Compl. ¶17.) Torah Temimah further breached its duties by both failing to protect the plaintiffs from Rabbi Kolko and failing to investigate Rabbi Kolko's actions. (John Doe No. 2, Am. Compl. ¶ 18, John Doe No. 3, Am. Compl. ¶18.)

Plaintiffs include a separate breach of fiduciary duty claim against both defendants. They allege that Torah Temimah breached its fiduciary duty to plaintiffs by allowing Rabbi Kolko to serve as Plaintiffs' rabbi, teacher, counselor, and advisor despite knowledge of his dangerous sexual propensities. Rabbi Kolko, as a teacher and counselor to the plaintiffs, breached his fiduciary duty by abusing them. (John Doe No. 2, Am. Compl. ¶¶ 22-27, 25, John Doe No. 3, Am. Compl. ¶¶ 22-27, 25.) For their third claim, plaintiffs allege that Rabbi Kolko sexually assaulted them. (John Doe No. 2, Am. Compl. ¶ 29, John Doe No. 3, Am. Compl. ¶ 29.) Plaintiffs seek monetary damages.

### *Motions to Dismiss the Amended Complaints*

Defendants, moving separately, filed pre-answer motions to dismiss both amended complaints on the ground that the claims are barred by application of the statute of limitations. Plaintiffs counter that defendants should be equitably estopped from invoking the statute of limitations as a defense because defendants' actions caused plaintiffs' delay in commencing suit.

## DISCUSSION

### *I.  The Rule 12(b)(6) Standard*

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor. *See Erickson v. Pardus*, ---U.S----,----, 127 S.Ct. 2197, 2200 (2007); *Ofori-Tenkorang v. Am. Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006) (citing *Twombly v. Bell Atlantic Corp.*, ---U.S.----, ----, 127 S.Ct. 1955, 1974 (2007)). A court must then determine whether a plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. While a complaint "does not need detailed factual allegations," *id.* at 1964, it nonetheless must give the defendant(s) "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 127 S.Ct. at 2200. As the Second Circuit recently stated, the "flexible 'plausibility standard'" enunciated in *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis added). "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Store Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999), quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984).

"Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss." *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.1989). Courts

4

treat such a motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Id.* In considering a motion to dismiss under Rule 12(b)(6) based upon the affirmative defense of statute of limitations, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

## *II. Plaintiffs' Claims are Time-Barred*

The Court sits in diversity jurisdiction and therefore New York state law governs substantive issues such as a statute of limitations defense. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The defendants have the initial burden of demonstrating that the time within which to commence the action had expired. *Santo B. v. Roman Catholic Archdioscese of New York, et al.*, --- N.Y.S.2d ----, 51 A.D.3d 956, 2008 WL 2210160 (N.Y.A.D.2 Dep't). In New York, if a plaintiff is an infant at the time a cause of action accrues, the time for commencing the suit is tolled for three years after the individual reaches the age of majority. N.Y. C.P.L.R. § 208. Under N.Y. C.P.L.R. § 105(j), the age is majority is eighteen years.

Both plaintiffs raise a negligence claim against Torah Teimimah, a breach of fiduciary duty claim against defendants Rabbi Kolko and Torah Temimah, and a sexual assault claim against Rabbi Kolko.

Under New York state law, an action to recover damages for negligence carries a statute of limitations of three years. N.Y. C.P.L.R. § 214(5). John Doe No. 2 was born in 1967. He commenced this suit approximately twenty-five years after the abuse ended and eighteen years after he reached the age of majority in 1985. John Doe No. 2's

5

negligence claim is therefore time-barred. John Doe No. 3 was born in 1975. Plaintiff reached the age of 18 in 1993. Therefore, he had to commence this action in 1996 to remain within the tolled statute of limitations period. However, plaintiff did not commence the present action until 2006 and accordingly his negligence claim is time-barred.

New York state law provides two statute of limitation periods for breach of fiduciary duty depending on the remedy sought. The period is six years when a plaintiff is seeking equitable relief. N.Y. C.P.L.R. § 213(1). However, when a plaintiff is seeking solely monetary damages, the statute of limitations is three years. N.Y. C.P.L.R. § 214(4). Both plaintiffs seek damages in excess of $10,000,000. Therefore, the applicable statute of limitations is three years. After tolling the statute of limitations due to plaintiffs' infancy, John Doe No. 2 had until 1985 to file his breach of fiduciary duty claim and John Doe No. 3 had until 1993. Having failed to do so, the statute of limitations serves as a bar to plaintiffs' second claim. *See Mars v. Diocese of Rochester*, 6 A.D.3d 1120, 775 N.Y.S.2d 681 (4th Dep't 2004) (In other cases brought by plaintiffs many years after alleged sexual abuse, the courts dismissed the complaints as untimely); *Basille v. Covenant House*, 152 Misc.2d 88, 575 N.Y.S.2d 233 (N.Y. 1991), *aff'd*, 191 A.D.2d 199, 594 N.Y.S.2d 192 (1st Dep't 1993) (three-year statute of limitation applied to sexual abuse victim's claims for negligence, breach of fiduciary duty, and vicarious liability).

Lastly, plaintiffs assert that defendant Rabbi Kolko sexually assaulted them. In New York, a sexual assault claim – an intentional tort – carries a one-year statute of limitations. N.Y. C.P.L.R. § 215(3). Taking into account John Doe No. 2's infancy, the

6

claim had to be brought by 1986 for the action to be timely. John Doe No. 3 was born in 1975 and reached the age of eighteen in 1993. John Doe No. 3 filed suit in 2006. For his sexual assault claim against Rabbir Kolko to be timely, John Doe No. 3 had to file the claim in 1994. Accordingly, the statute of limitations for each claim that plaintiffs allege in their respective amended complaints have expired.

### III. *The Doctrine of Equitable Estoppel*

Despite the fact that the statute of limitations has clearly run, plaintiffs assert that defendants should be equitably estopped from invoking the statute of limitations as a defense.

Courts apply the doctrine of equitable estoppel where "it would be unjust to allow a defendant to assert a statute of limitations defense." *Zumpano v. Quinn*, 6 N.Y.3d 666, 673 (2006). "[W]here plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.," *Simcuski v Saeli*, 44 NY2d 442, 449 (1978), courts will find that defendants are estopped from asserting a statute of limitations defense. *Zumpano*, 6 N.Y.3d at 674. "It is ... fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Id. citing Matter of Steyer*, 70 N.Y.2d 990, 993 (1988) (emphasis supplied). The burden is on the plaintiffs to prove that they were prevented from commencing suit within the time restrictions. *See id.* Plaintiff must also establish that an action was commenced "in a reasonably timely fashion." *Doe v. Holy See*, 17 A.D.3d 793, 796, 793 N.Y.S.2d 565 (App. Div. 3d Dep't 2005). Therefore, "due diligence on the part of the plaintiff in bringing [an] action is an essential element for the applicability of the doctrine of equitable estoppel." *Id.*

7

Here plaintiffs have failed to meet their burden and the statutory limitations period applies.

### A.  *Claims Against Torah Temimah*

Plaintiffs contend that instead of conducting a good faith investigation into credible reports that Rabbi Kolko was sexually abusing young boys, Rabbi Lipa Margulies, "as director and managing agent of Torah Temimah, in concert with Rabbi Kolko, engaged in a campaign of intimidation, concealment and misrepresentations designed to prevent victims from filing civil lawsuits and/or obtaining facts necessary to bring civil claims." (John Doe No. 2, Am. Compl. ¶ 12, John Doe No. 3, Am. Compl. ¶ 12.)

Specifically, plaintiffs allege that: (1) beginning in 1985, and lasting for "years," Rabbi Margulies directed Rabbi Pinchus Scheinberg to contact victims and "tell them they were not actually abused and have no claim to bring"; (2) beginning in 1985, Rabbi Margulies contacted family members of victims and threatened that their children would be expelled from the Yeshiva and prevented from attending other yeshivas if they pursued claims; (3) Rabbi Margulies threatened Rabbi Kolko's victims with "retaliation and ostracism from their Orthodox Jewish Community if they pursued their claims"; (4) for the past twenty-five years, Rabbi Margulies has repeatedly stated that a 1985 Rabbinical Court cleared Rabbi Kolko of allegations of sexual abuse by other victims; and (5) Rabbi Margulies repeatedly stated that he was unaware of any allegations of sexual abuse or any sexually inappropriate conduct of Rabbi Kolko's. (John Doe No. 2 Compl. ¶¶ 12-13, John Doe No. 3 Compl. ¶¶ 12-13.)

8

Plaintiffs argue that "[i]t is unnecessary in this case for Plaintiff to allege misrepresentations or deceptive conduct directed specifically at them. Representations made to the public at large or to a specific audience – in this case, the local Torah Terminah Jewish community – can be sufficient." (John Doe No. 2 Memorandum, p. 8, John Doe No. 3 Memorandum, p. 8) This argument demonstrates plaintiffs' fundamental misunderstanding of the equitable estoppel doctrine. Equitable estoppel is appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, not a community at large. While plaintiffs have identified the defendants' misrepresentations and intimidation tactics, they do not explain how this conduct stopped *them* from filing suit. Plaintiffs state that defendants intimidated Rabbi Kolko's victims into silence by threatening to expel victims' family members from yeshivas and to ostracize these victims from the Orthodox community. Neither plaintiff indicates *when* Torah Temimah threatened him or his family. Plaintiffs do not even establish that defendants, in fact, directed these tactics at them as plaintiffs' allegations establish that defendants targeted "victims," not John Doe No. 2 or John Doe No. 3.

Plaintiffs allege that defendants acted in concert to mislead plaintiffs as to their culpability. (John Doe No. 2 Memo. of Law, p. 4.) Plaintiffs write that they were led to believe that Torah Temimah was not on notice of Rabbi Kolko's dangerous sexual propensities nor that Rabbi Kolko was unfit to work at the Yeshiva. They argue that because defendants conspired to misrepresent that prior sexual abuse claims against Rabbi Kolko had been fairly adjudicated by a rabbinical court which cleared Rabbi Kolko of all wrongdoing, plaintiffs reasonably concluded that Torah Temimah neither

9

knew nor had reason to know of sexual abuse by Rabbi Kolko. This argument and facts included in the amended complaints belie plaintiffs' conclusion. Instead, plaintiffs demonstrate that they, and Torah Temimah have been on notice since early 1985 that reports of abuse surfaced which culminated in a legal proceeding against Rabbi Kolko before a Rabbinical Court. Even if the Rabbinical Court found Rabbi Kolko innocent of any wrongdoings as to other alleged victims, this determination did not alter plaintiffs' understanding that they were abused and that other students had reported abuse. Thus, nothing stopped John Doe No. 2 and John Doe No. 3 from investigating whether or not Torah Temimah knew or should have known that Rabbi Kolko harmed John Doe No. 2 and John Doe No. 3 contemporaneous to plaintiffs' abuse.

Plaintiffs do not explain why they were able to commence these actions in 2006, as opposed to any prior year. They do not offer an explanation about why they waited so many years to bring an action or, more importantly, what event or series of events prevented them from filing their actions before they did. One paragraph of the complaint alleges that the misrepresentations continued after 1985 "for a period of years" but does not indicate when the misrepresentations ceased. (John Doe No. 2, Am. Compl. ¶ 13(d), John Doe No. 3 Am. Compl. ¶ 13(d)). Similarly, another section alleges that defendants' campaign of concealment "continued for years" without further specificity as to how or when the campaign ended. (John Doe No. 2 Am. Compl. ¶ 12(a), John Doe No. 3 Am. Compl. ¶ 12(a)). Torah Temimah persuasively argues that plaintiffs have not demonstrated that they reasonably relied on the alleged misrepresentations or that defendants had a duty to inform plaintiffs that Torah Temimah suspected Rabbi Kolko of

sexual impropriety.3

### *Claims Against Defendant Rabbi Kolko*

Contrary to plaintiffs' argument that they were affirmatively induced by defendants to refrain from pursuing their claims, the allegations in their amended complaints demonstrate that they had all the information necessary to commence a timely action against Rabbi Kolko.

The amended complaint alleges generally that Rabbi Margulies and Rabbi Kolko engaged in tactics orchestrated to prevent "victims of sexual abuse from filing suit." (John Doe No. 2, Am. Compl. ¶ 12, John Doe No. 3, Am. Compl. ¶ 12.) According to the plaintiffs, Rabbi Margulies made material misrepresentations about Rabbi Kolko's history of sexual assault. For example, Rabbi Margulies told another rabbi to contact victims to tell them that they were not abused. (Am. Compl. ¶ 12(a)). However, plaintiffs do not allege that Rabbi Margulies contacted *them* and instructed them that they were not abused. Even if plaintiffs alleged this point, it is a meritless argument. Plaintiffs could not reasonably rely on Rabbi Margulies' statements denying that

---

[3] *Doe*, 17 A.D.3d at 795

> Generally, mere silence or failure to disclose the wrongdoing is insufficient to support an estoppel, but concealment without actual misrepresentation may form the basis for invocation of the doctrine if there was a fiduciary relationship which gave the defendant an obligation to inform the plaintiff of facts underlying the claim. In general, a fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge. Where, as here, a parishioner plaintiff seeks to establish the existence of a fiduciary relationship with an institutional church defendant, the plaintiff may not merely rely on the church's status in general, but must come forward with facts demonstrating that his or her relationship with the institution was somehow unique or distinct from the institution's relationship with other parishioners generally.

(internal citations omitted).

11

plaintiffs were abused when plaintiffs were fully aware of the abuse they had endured. Despite their allegations that a campaign of intimidation was used to conceal information about Rabbi Kolko's sexual abuse, plaintiffs were still personally aware of Rabbi Kolko's actions. *Zumpano*, 6 N.Y.3d 676 ("defendants' concealment of their own actions and of the priests' conduct, postwrongdoing [*sic*], does not alter the fact that plaintiffs were fully aware that they had been abused.")

Neither plaintiff adequately explains why he did not pursue timely suit against Rabbi Kolko. In a footnote, plaintiffs state that all arguments set forth in their memorandum of law apply to both defendants. (John Doe No. 2 Memo. of Law, p. 5 n.2.) However, plaintiffs' amended complaints and briefs are silent regarding any conduct by Rabbi Kolko that furthered his or Torah Temimah's campaign to prevent victims of sexual abuse from filing suit against the Yeshiva. Simply alleging that Rabbi Kolko acted in concert with Torah Temimah to somehow prevent plaintiffs from commencing timely suit is insufficient to evoke the doctrine of equitable estoppel. *Zumpano*, 6 N.Y.3d at 707 (dismissing plaintiff's complaint because *inter alia* plaintiff did not allege any specific misrepresentation to them by defendant). Plaintiffs' claims against Rabbi Kolko must be dismissed.

## CONCLUSION

For the reasons set forth above, the amended complaints filed by John Doe No. 2 and John Doe No. 3 are dismissed and the Clerk of the Court is directed to close each case.

SO ORDERED.

Dated: Brooklyn, New York
September 4, 2008

/s/ SLT
SANDRA L. TOWNES
United States District Judge